(3 Misc. Rep. 214.)

LINDQUIST v. GLINES et al.

(Supreme Court, Special Term, New York County. April, 1893.)

BENEVOLENT CORPORATIONS—INSOLVENCY—DISTRIBUTION OF FUNDS.

Where a foreign benevolent corporation, consisting of a governing body and local branches, the articles of which require a part of each assessment received by the local branches to be set aside as a reserve fund, to be the property of the governing body, but to be retained by the branch and invested by it, becomes insolvent, the reserve fund of a branch in New York will be distributed among the members of such branch in proportion to the assessments paid by them.

Action by Gustav Lindquist against George E. Glines, as receiver of the Supreme Sitting of the Order of the Iron Hall, and others, to compel the distribution of the funds of a local branch of the insolvent corporation among the members of such branch. Judgment for plaintiff.

Woodward & Mayer, for plaintiff.
Krones & Findley, for defendants.

INGRAHAM, J.  The Order of the Iron Hall, a corporation organized under the laws of the state of Indiana, was incorporated as a benevolent corporation to assist its members; to improve the condition of its members morally and materially; to establish a benefit fund, from which the members of the order should receive a benefit as should be fixed by its by-laws, and to establish a life fund, from which, upon the death of a member of the order, a certain sum should be paid to a designated beneficiary.  The scheme provided for the establishment of local branches of the order, to be under the general control of what was known as the "Supreme Sitting of the Iron Hall."  By one of the laws of the supreme sitting it was provided that 20 per cent. of the amount received by each branch on each assessment shall be set aside and retained as a reserve fund, which fund is the property of the supreme sitting, and shall be subject to its control at all times, as thereinafter provided. The laws also contain various provisions for the investment by each branch of this reserve fund.  Many branches were organized in this state; among others, a local branch, No. 417, located in this city. Of that branch the plaintiff became a member, and with other members duly paid his assessment.  This local branch, under the provisions of the laws before mentioned, deducted 20 per cent. received by the branch on each assessment which, at the time of the appointment of the receiver of the corporation, amounted to the sum of $2,634.44.  It appears that on or about the 31st of August, 1892, the superior court of Marion county, in the state of Indiana, appointed a receiver of the corporation, on the ground that the same was insolvent, and unable to meet its obligations, and since that time the corporation has ceased transacting any business.  Subsequently an application was made in this state for the appointment of a receiver of the property in this state, and the defendant George E. Glines was appointed receiver of such property, and under that order the amount of the reserve fund in the hands of the local branch No. 417 was paid to him.  This action is brought by plaintiff as a member of the lower branch on behalf of himself and other members thereof, and asks that this reserve fund of the local branch of which he was a member be returned to the members of the local branch who had paid it to the society.

I do not think it material to determine whether or not this corporation could legally transact business in this state without a certificate from the superintendent of the insurance department, as it seems to me that this reserve fund must be returned to those whose assessments paid to the local branch made up the fund.  It does not appear that there are any creditors of the corporation within this state except those claiming by virtue of their membership. This being so, there are three ways in which this reserve fund could be disposed of:  First, by remitting it to the receiver appointed by the courts of Indiana of the parent corporation; second, by distributing it among all of the various local branches within this

state; and, third, by repaying it to those whose assessments paid to each branch had created the fund. The controlling fact is that the scheme to carry out which the corporation is organized has failed. The corporation, therefore, cannot carry out its agreement with its members, and it would certainly appear to be inequitable to take this fund from this state, and send it to a foreign jurisdiction, to be distributed among the members of the order, when, by the very terms of the law creating the reserve fund, it was to be retained by each branch and invested by it; and to allow this money to be paid into a foreign jurisdiction, merely for the purpose of distribution, would be to appropriate the money paid for the purpose of establishing a reserve fund for their own benefit, to be applied to the use of other members of the corporation. I can see no principle that requires that this fund should be divided among all of the branches within this state. It is apparent that the members have not contributed equally to the fund, as the oldest member would pay more assessments than the younger members, and it would seem to me that an equitable disposition of the fund would be to direct the reserve fund held by each local branch to be repaid to the members whose assessments had contributed to make up the fund, in the proportion that each member's payment had to the total fund. There can be no difficulty about carrying out such a distribution, and, as the money is at present in the hands of a receiver appointed by the court, I see no necessity for appointing a new receiver. The judgment can direct the amount of this reserve fund to be applied by the present receiver, as hereinbefore indicated. If the parties cannot agree as to the amount to be paid to each member of this local branch, an order of reference can be had to ascertain the amount due to each member; the decision and judgment to be settled on notice.